Filed 9/22/22  In re N.D. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re N.D. et al., Persons Coming Under Juvenile Court Law. | B316361 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>M.D.,<br><br>Defendant and Appellant. | Los Angeles County Super. Ct. No. 19CCJP05436A-B |

APPEAL from an order of the Superior Court of Los Angeles County.  Steff R. Padilla, Juvenile Court Referee. Affirmed.

Joseph T. Tavano, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Kelly Emling, Deputy County Counsel, for Plaintiff and Respondent.

————————————

Father M.D. appeals the juvenile court's order terminating his parental rights to his children N.D. and K.D. Father's sole claim of error is that the Los Angeles County Department of Children and Family Services (Department) made an inadequate initial inquiry concerning the children's ancestry for purposes of the Indian Child Welfare Act (ICWA; 25 U.S.C. § 1901 et seq.). We affirm.

## BACKGROUND

### 1. Overview of Proceedings

N.D. is now 18 years old. K.D. is now 17 years old. This dependency proceeding began three years ago, in 2019, when N.D. and K.D. were detained from their parents due to parents' drug abuse and neglect of the children, who lived in a dangerously filthy and deplorably unsanitary home. Soon thereafter, the Department added allegations of domestic violence. The children were placed with N.D.'s high school music teacher and her husband. The parents failed to reunify with their children, and the court terminated reunification services in April 2021. The foster parents wanted to adopt both children, and both children told the court they wanted to be adopted. The court terminated parental rights in September 2021.

### 2. Facts Relevant to ICWA Inquiry

Paternal grandmother lived in the squalid home with the family when the children were detained. In the detention report, the Department reported the children would be staying with paternal aunt while the parents cleaned the house.

The petition reflects that the Department questioned father in person about K.D. and N.D.'s ancestry and he advised that neither has any known Indian ancestry. In August 2019, at the initial appearance hearing, both mother and father filed parental

notification of Indian status forms (ICWA–020) indicating "I have no Indian ancestry as far as I know." Counsel for father reconfirmed to the court at the hearing that father has "[n]o Native American heritage." Based on the record before it, the court found "at this time it has no reason to know that I.C.W.A. applies to this matter."

The ICWA–020 forms and the court's minute order of proceedings admonished the parents to keep the Department, their attorneys, and the court aware of any new information relating to possible ICWA status.

Additional ICWA forms were attached to the amended petition, stating the Department questioned both parents in person about K.D. and N.D.'s ancestry and both advised that neither has any known Indian ancestry.

In an October 2019 addendum report, mother reported she was adopted at a very young age and had no information about her biological parents. She was raised in the Philippines by her adoptive parents, who are now deceased, and came to the U.S. when she was 13. She has two brothers who live locally but she has minimal contacts with them. Although the report does not specify, we infer from the attendant circumstances that the brothers are adoptive and not biological.

Father reported he was born in Hawaii, moved to California with his mother when he was seven, and did not know his father. He has a good relationship with his three sisters. Paternal grandmother and paternal great-aunt attended the jurisdiction and disposition hearing in October 2019.

We are directed to no evidence in the record that the Department ever asked any extended family members about the

3

children's possible Indian heritage, notwithstanding having direct contact with certain extended family members.

## DISCUSSION

Congress enacted ICWA " 'to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families.' " (*In re Isaiah W.* (2016) 1 Cal.5th 1, 8.)  It is incumbent upon a state court administering a proceeding where child custody is at issue to inquire whether the subject child is an Indian child.  The scope of the duty on the court, as well as certain participants in the proceeding, is defined by federal regulations and related state law.  (See, e.g., 25 C.F.R. § 23.107; Welf. & Inst. Code, § 224.2; Cal. Rules of Court, rule 5.481.)

The duty of inquiry has three "phases."  Father claims error with the first.  This phase—the "initial inquiry"—applies in every case.  The initial inquiry requires the court and the Department to ask extended family members about the child's possible Indian ancestry.  (See Welf. & Inst. Code, § 224.2, subds. (a), (b), (c); *In re D.F.* (2020) 55 Cal.App.5th 558, 566.)

Where the "initial inquiry" gives "reason to believe" the child is an Indian child, but there is insufficient information to make a definitive determination, the second phase—"further inquiry"—comes into play.  (Welf. & Inst. Code, § 224.2, subd. (e)(2).)  Further inquiry requires more robust investigation into possible Indian ancestry.  (See *ibid.*; *In re D.F.*, *supra*, 55 Cal.App.5th at p. 566.)  If further inquiry gives the juvenile court a "reason to know" a child is an Indian child, the third phase is triggered.  This phase requires that notice pursuant to ICWA be sent to the tribes to facilitate their participation in the proceedings.  (§ 224.3, subd. (a)(1); *In re D.F.*, at p. 568.)

4

" ' "[W]e review the juvenile court's ICWA findings under the substantial evidence test, which requires us to determine if reasonable, credible evidence of solid value supports the court's order.  [Citations.]  We must uphold the court's orders and findings if any substantial evidence, contradicted or uncontradicted, supports them, and we resolve all conflicts in favor of affirmance." ' "  (*In re Josiah T.* (2021) 71 Cal.App.5th 388, 401.)

As part of its initial inquiry, the Department was required to ask "extended family members," among others, "whether the child is, or may be, an Indian child . . . ."  (Welf. & Inst. Code, § 224.2, subd. (b); *In re S.S.* (2022) 75 Cal.App.5th 575, 581.)  Although the Department asked the parents about Indian heritage, it failed to inquire of extended family members with whom the Department had contact.

In the absence of any evidence the Department complied with its Welfare and Institutions Code section 224.2, subdivision (b) duty to inquire of extended family members, the juvenile court's finding that ICWA does not apply is error.  (See *In re Darian R.* (2022) 75 Cal.App.5th 502, 509 [finding error where evidence showed Department had contact with maternal aunt and maternal grandfather but failed to inquire of them regarding Indian ancestry].)  However, we can reverse only if the error was prejudicial.  (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 742 (*Benjamin M.*), citing Cal. Const., art. VI, § 13.)

Courts are divided on what showing of prejudice warrants reversal for initial inquiry errors.  "Some courts have addressed this problem by requiring an appellant who asserts a breach of the duty of inquiry to, at a minimum, make an offer of proof or other affirmative assertion of Indian heritage on appeal."  (*In*

5

*re S.S., supra,* 75 Cal.App.5th at pp. 581–582, citing cases.)
Others have excused such a showing, effectively treating failure
to inquire as error per se.  (See, e.g., *In re Y.W.* (2021)
70 Cal.App.5th 542, 556; *In re J.C.* (2022) 77 Cal.App.5th 70, 80.)
The Fourth Appellate District in *Benjamin M.*, *supra*,
70 Cal.App.5th 735, took a third approach, concluding that "a
court must reverse where the record demonstrates that the
agency has not only failed in its duty of initial inquiry, but where
the record indicates that there was readily obtainable
information that was likely to bear meaningfully upon whether
the child is an Indian child." (*Id*. at p. 744.)  Our court recently
took a fourth approach, concluding initial inquiry errors require
reversal only when the record of proceedings in the juvenile court
or a proffer of evidence made on appeal suggests a reason to
believe that the child may be an Indian child.  (*In re Dezi C.*
(2022) 79 Cal.App.5th 769, 779.)

We have previously rejected the error per se line of cases.
(*In re M.M.* (2022) 81 Cal.App.5th 61, 71.)  Under any of the other
three lines of cases, the juvenile court's error here was harmless.
On the record before us, there is no reason to believe there is
readily available information that is likely to bear meaningfully
on whether N.D. and K.D. have Indian ancestry.  Mother and
father appeared and unequivocally denied knowledge of any
Indian ancestry.  Mother was adopted at a young age and has no
information about her biological parents.  She was raised in the
Philippines, and father was raised in Hawaii until he moved to
California at age seven.  Nothing in the record concerning the
parents' background indicates there is reason to believe N.D. and
K.D. have Indian ancestry.

6

Moreover, no one has even suggested there is any reason to believe N.D. and K.D. might have Indian ancestry. Certainly, father has made no offer of proof that they are Indian children. Instead, father and mother both certified they have no information N.D. or K.D. may have Indian heritage. No relative—not even paternal grandmother or paternal great-aunt, both of whom attended the jurisdiction and disposition hearing— has provided any information to suggest N.D. and K.D. have Indian heritage. As such, this case is unlike *Benjamin M.* There, the father was absent from the proceedings and no person from the father's side of the family had been asked about Indian ancestry. With information about ancestry on the father's side "missing," inquiry with a person sharing the father's ancestry "would likely have shed meaningful light on whether there [wa]s reason to believe Benjamin [wa]s an Indian child." (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.) No such facts are present here.

Given the absence of any evidence or claim that N.D. and K.D. might have Indian ancestry, father's "unvarnished contention that additional interviews of [relatives] would have meaningfully elucidated the children's Indian ancestry" does not support a finding of prejudice. (*In re Darian R.*, *supra*, 75 Cal.App.5th at p. 510.)

Finally, we note that no practical purpose would be served if we were to remand for a further ICWA inquiry in this case, where N.D. has aged out of the system, and K.D. will age out in another year. We recognize that N.D. may remain a nonminor dependent, at least until she is adopted, but one thing is clear: N.D. is not a child, Indian or otherwise.

## DISPOSITION

The order terminating parental rights is affirmed.


GRIMES, J.

I CONCUR:


STRATTON, P. J.

**WILEY, J., Dissenting.**

The Department could easily have asked the paternal grandmother about possible Indian heritage but did not.  I adhere to my previous views:  this is my ninth dissent on this issue, and I am hardly alone.  (E.g., *In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1015–1025 (dis. opn. of Lavin, J.).)  The Department's management could eliminate harmful delay and costly controversy by instructing its social workers to ask a few simple questions.


WILEY, J.